### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| COUNTRY LIFE INSURANCE COMPANY, an Illinois Corporation, COUNTRY INVESTORS LIFE ASSURANCE COMPANY, and COUNTRY MUTUAL INSURANCE COMPANY, an Illinois Corporation,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>ST. PAUL SURPLUS LINES INSURANCE COMPANY, AGRICULTURAL EXCESS AND SURPLUS INSURANCE COMPANY, n/k/a GREAT AMERICAN E&S INSURANCE COMPANY, and FEDERAL INSURANCE COMPANY,<br><br>　　　　　Defendants. | Case No. 03-1224 |

## O R D E R

This matter is now before the Court on Defendant Federal Insurance Company's ("Federal") Motion for Judgment on the Pleadings. For the reasons set forth below, Federal's Motion for Judgment on the Pleadings [#110] is GRANTED.

## BACKGROUND[1]

Plaintiffs Country Life Insurance Company, Country Investors Life Assurance Company, and Country Mutual Insurance Company (collectively referred to as "Country") are insurance companies headquartered in Bloomington, Illinois. From 1996 to 1999, Country Life and Country Mutual purchased Insurance Company Professional Liability Coverage from three insurers, namely Defendants St. Paul Surplus Lines Insurance Company ("St. Paul"), Federal, and Agricultural Excess and Surplus Insurance Company ("AESIC").

From August 20, 1996, through and including August 20, 1999, Country was insured under AESIC's policy number ICL2067727 with a $10,000,000 aggregate limit for the three-year policy term excess of a $1,000,000 self-insured retention per claim. During the same period, Country purchased a policy from St. Paul with a $10,000,000 aggregate excess of $1,000,000 self-insured retention for the policy period under policy number SIO5500276. Country also purchased a policy from Federal for $10,000,000 aggregate per policy year excess of $20,000,000 for the policy period excess of $1,000,000 self-insured retention per claim under policy number 7022-84-97. Both the St. Paul and Federal policies follow the form of the AESIC policy.

On February 9, 1998, a class action complaint captioned <u>Duckworth v. Country Life Insurance Company</u>, Case No. 98-1046 was filed in the Circuit Court

---

[1] The information contained in this section was largely derived from the allegations in the Complaint, which must be taken as true for purposes of this motions.

of Cook County, Illinois, alleging that Country's agents had made misleading representations to the insured to the effect that accumulated interest/dividends would be sufficient to enable the premiums on their life insurance policies to "disappear" after a number of years. Defendants were notified of this suit on February 24, 1998.

On May 18, 1998, a second class action complaint with similar allegations based on "disappearing" or "vanishing" premiums was filed against Country. Lopez v. Country Life Insurance Company, Case No. 98-1153, was filed in this Court. Again, each of the Defendants acknowledged receiving notice of this suit.

On December 8, 1998, Country received another complaint captioned Reyes v. Country Life Insurance Company. The Reyes case was filed in the Cook County Circuit Court on November 25, 1998. Each of the Defendants received notice of the Reyes complaint and advised Country that the three lawsuits would be consolidated and addressed jointly in future communications.

The Duckworth and Reyes cases were consolidated in the Cook County Circuit Court, and the parties began to explore the possibility of settlement. The Defendants were informed of the settlement negotiations, and each insurer was asked to and provided an opportunity to consent to the settlement proposal in principal. On March 30, 2000, Country entered into a Stipulation of Settlement which addressed the claims asserted in the three cases and provided for the dismissal of the Lopez case with prejudice. The settlement applied to a class of persons who "have or had an ownership interest in one or more whole life and universal life insurance policies issued by Country Life in the United States from

January 1, 1982 through May 31, 1998" and included the release of all claims pertaining to Country's insurance sales practices.

On January 8, 1996, a complaint captioned <u>Strozda v. Almy</u>, Case No. 96 L 222, was filed in the Circuit Court of Cook County. The complaint was amended to name Country as a defendant on July 11, 1997, and alleged that Country was liable for burn injuries suffered by the plaintiffs in a methane gas explosion. The methane gas was generated by an accumulation of manure in the barn where plaintiffs were working and was ignited by the pilot light of an L.B. White heater. According to the complaint, an employee of Country, which was the property insurer of the barn where the explosion occurred, informed the insureds that the L.B. White heater was less likely to start a fire than other types of heaters and that if they chose to install another brand of heater, their annual premiums would be $1,500 higher. In February 1999, on the eve of trial, Country settled the <u>Almy</u> litigation. Country alleges that in mid-1999, when it became aware that the <u>Almy</u> claim might exhaust the limits of the AESIC policy, it gave immediate notice to St. Paul and Federal.

Country submitted documentation to St. Paul advising that AESIC had paid the policy limits for the cost of the litigation and settlement of the vanishing premium litigation, informing St. Paul of costs exceeding the coverage under the AESIC policy, and requesting reimbursement of over $3.2 million under the first layer of excess coverage under the St. Paul policy. St. Paul has refused to reimburse Country as requested based on its assertion that the vanishing premium litigation and settlement is not covered by its policy. Country's request for

reimbursement in connection with the Almy litigation and settlement has been similarly denied.

On July 9, 2003, Country brought this suit seeking damages for breach of contract, as well as a declaration that St. Paul and Federal are obligated to reimburse Country for the losses it suffered in connection with the Duckworth/Lopez/Reyes vanishing premium and Almy litigation and settlements. Federal has now moved for judgment on the pleadings in connection with Country's claim in Count IV of the Complaint that Federal is liable for coverage obligations for the litigation and settlement of the Almy case, and this Order follows.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial." A motion for judgment on the pleadings is subject to the same standards as a Rule 12(b)(6) motion to dismiss. The Court must accept all well-pled allegations as true and must view those allegations in the light most favorable to the non-moving party. Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 452 (7th Cir. 1998). Thus, dismissal is proper only if it appears "beyond doubt that the [non-moving party] can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## DISCUSSION

Federal now raises the argument previously raised by St. Paul, that the Almy settlement is not covered because Country did not give timely notice of the claim.

The plaintiffs in that case filed suit against the Almys on January 8, 1996. Country was added as an additional defendant in an amended complaint filed on July 11, 1997. Country agreed to settle the claim in February 1999 for an amount that was in excess of its self-insured retention and was exhaustive of the AESIC policy limits after settling the Duckworth litigation. Federal asserts that it received no notice of the Almy claim from Country until July 26, 1999.

Endorsement No. 7 of the Federal policy provides:

> It is understood and agreed that the Notice and Proof Section, as set forth on Page 2 of 3, is deleted in its entirety and replaced with the following:
>
> **NOTICE**
>
> The Company shall be given notice in writing as soon as practicable: (1) in the event of the cancellation of any Underlying Insurance and; (2) of any notice given to the Company providing Underlying Insurance or any additional or return premiums charged or paid in connection with the Underlying Insurance.

As Country clearly had notice of the Almy claim no later than July 1997 when it informed AESIC of the claim, yet waited almost two years later to provide notice to Federal, Federal contends that Country breached its duty to provide timely notice of the potential claim, thereby invalidating any potential coverage for the Almy settlement. Country responds that the question of whether notice was timely given requires a factual inquiry into whether the Federal policy was triggered by a $1.2 million settlement before the underlying AESIC policy was exhausted and whether it had any duty to notify Federal before the $10 million limits of the underlying policy were exhausted.

The Seventh Circuit has acknowledged that the purpose of notice provisions such as this is "to ensure that the insurer will not be prejudiced in its ability to investigate and defend claims against its insureds." Commercial Underwriters Insurance Co. v. Aires Environmental Services, Ltd., 259 F.3d 792, 796 (7th Cir. 2001); *see also*, American Country Insurance Co. v. Efficient Construction Corp., 225 Ill.App.3d 177, 181, 587 N.E.2d 1073, 1075 (1992). Notice provisions are not mere technical requirements, but rather are conditions precedent to the triggering of an insurer's contractual duties. Northbrook Property & Casualty Insurance Co. v. Applied Systems, Inc., 313 Ill.App.3d 457, 464, 729 N.E.2d 915, 920-21 (2000). Accordingly, the failure to fulfill a contractual requirement of timely notice can relieve the insurer of its duty to defend or indemnify the insureds under the policy. Aires Environmental, 259 F.3d at 796; Montgomery Ward & Co. v. Home Insurance Co., 324 Ill.App.3d 441, 449, 753 N.E.2d 999, 1005 (2001).

In this Circuit, a determination of whether notice in a particular case was timely is a fact intensive inquiry. Id. Prejudice to the insurer as a result of the delay is one factor to be considered, but "an insurer need not prove that it was prejudiced in order to deny coverage." Id. On the other hand, "a lengthy passage of time is not an absolute bar to coverage provided that the insured has a justifiable excuse for the delay." Id. Other factors to be considered are: (1) the language of the policy's notice provisions; (2) the degree of the insured's sophistication in the world of commerce and insurance; (3) the insured's awareness that an occurrence or suit as defined by the policy has taken place; and

(4) the insured's diligence and reasonable care in ascertaining whether policy coverage is available.  <u>Applied Systems</u>, 313 Ill.App.3d at 466.

While the adequacy of notice is generally a fact intensive inquiry, important material facts in connection with this claim are not in dispute even at the Motion to Dismiss stage.  The plain language of the Federal policy required notice "of any notice given to a Company providing Underlying Insurance" as soon as practicable; in contrast to many of the cases addressing this topic, it did not require notice only if the claim was "reasonably likely to involve the excess policy at issue" or provide for any other discretionary exercise of judgment.  With all due respect to Country, the factual issue it asserts as to whether the Federal policy was likely to be triggered by the <u>Almy</u> settlement would appear to be irrelevant under the plain and non-discretionary language of the Federal policy requiring notice as soon as practicable "of any notice given to a Company providing Underlying Insurance" coverage.  As AESIC was notified of the <u>Almy</u> case in July 1997, and it is undisputed that Federal did not receive notice until July 1999, it would appear that the notice to Federal was not as soon as practicable after giving notice to the underlying carrier.

Country cites to the recent opinion in <u>Zurich Insurance Company v. Walsh Construction Company</u>, 352 Ill.App.3d 504, 816 N.E.2d 801 (1st Dist. 2004).  In <u>Zurich</u>, the Illinois Appellate Court found that when applying an "as soon as practicable" standard, "the test is generally whether a reasonably prudent person could foresee a suit involving the policy and would contact his or her insurer."  <u>Id.</u> at 509.  The court did note that in the context of an excess policy, "courts consider

'when a reasonable person would have believed it reasonably likely that the claim would implicate the excess insurance.'" Id. at 510.  However, this finding immediately followed the court's recognition that the excess policy included language requiring notice of an occurrence or suit "'when it appears likely' that the excess policy will be implicated."  Id. at 509-10.  The court restated that "what constitutes reasonable notice in this case depends upon when a reasonably prudent person could foresee a suit involving the excess coverage and would contact his or her insurer."  Id. at 510.  Facts significant to this issue were that timely notice had been given to the underlying insurer, which afforded coverage of $1 million per occurrence, $2 million aggregate, supplemented by a $100 million umbrella policy, and that there was no reason to foresee that the underlying insurer would go bankrupt.  Id. at 510.  Notice was given to the excess carrier within 12 days after it was informed of its primary carrier's insolvency, and Zurich did not argue that it was prejudiced in any way by the delay in notice.  Id. at 511.

      The case now before this Court is readily distinguishable.  Country is no stranger to the language and construction of insurance policies, as it is a sophisticated insurance company itself.  The Federal policy did not require notice of any occurrence that might give rise to a potential claim as soon as practicable; rather, the policy plainly required notice as soon as practicable after any notice was given to an insurer providing underlying coverage, and it is undisputed that Country notified AESIC of the Almy litigation in 1997.  Furthermore, Country settled the Almy case in February-March 1999, but still waited more than four months before notifying any excess carrier in late-July 1999.  Even assuming that the delay

were limited to this four month window, such a delay is clearly more prejudicial than the passing of 12 days.

Unlike the case in Zurich, where 4 individual work-related accident claims had to exceed coverage limits of $1 million per occurrence, $2 million aggregate, and a $100 million umbrella policy, Country only had to exceed a $1 million retention, $10 million in primary coverage, and a first level of $10 million in excess coverage to reach the Federal policy.  Here, Country was aware of not only the Almy personal injury claim, but also was aware of the vanishing premiums cases asserting claims on behalf of a broad class of persons who "have or had an ownership interest in one or more whole life and universal life insurance policies issued by Country Life in the United States from January 1, 1982 through May 31, 1998."  Thus, Country's exposure was far greater than that of the insured in Zurich, and Country had far less protection to expend before reaching the excess policies.

Under these circumstances, a reasonable person in Country's position should have foreseen the likelihood that the excess coverage provided by Federal would have been implicated.  Country provided immediate notice of each of the vanishing premiums suits to each of the excess carriers without waiting to see whether the first layer of coverage was exhausted.  The Court finds Country's assertion that it was not unreasonable to depart from this practice with respect to the Almy matter and wait to give notice of that claim until nearly two years after being added as a defendant in the suit and after informing AESIC of the claim to be incomprehensible, particularly in light of the fact that Country knew that it was also involved in the vanishing premiums litigation at that time.

Moreover, assuming that Country's notice to Federal could somehow be deemed timely, Zurich did not involve a situation where coverage was sought based on expenses incurred when litigation was settled by the insured without having first given notice to the excess carrier, and Federal would be entitled to judgment on the pleadings based on Country's undisputed violation of another contractual provision.  Even after agreeing to a settlement in Almy, Country waited more than another three months before giving notice to Federal.  As a result, Federal was completely deprived of any opportunity to conduct any meaningful investigation, control or assist in the defense, or direct the settlement.  This is unquestionably prejudicial.  Country also failed to obtain Federal's consent to the Almy settlement, contrary to section VI A of the policy, which provides:

> [Country] shall not admit liability, consent to any judgment against them, or agree to any settlement without [Federal's] consent, such consent not to be unreasonably withheld.  Any admission of liability, consent to any judgment, or agreement to any settlement without or prior to [Federal's] consent shall not be covered hereunder.

This is also extremely prejudicial, as Country effectively bound Federal to the payment of the settlement negotiated without its knowledge or consent, which provides an additional basis for invalidating Country's potential coverage for the Almy settlement under the plain language of the policy itself.

Country makes no real attempt to respond to this issue other than arguing that Federal has not made an adequate showing of prejudice.  However, being bound to a settlement as to which it had no opportunity to investigate, evaluate, negotiate or otherwise participate is inherently prejudicial.  Based on the

- 11 -

unambiguous and uncontroverted language of the cooperation provisions in the Federal policy, as well as the other circumstances of record in this case, the Court finds as a matter of law that there is no set of facts that can be proven by Country that would enable it to overcome these barriers and entitle it to coverage for the Almy settlement. Federal's Motion for Judgment on the Pleadings is therefore granted with respect to any claims for coverage concerning the Almy settlement.[2]

## CONCLUSION

For the reasons set forth above, Federal's Motion for Judgment on the Pleadings [#110] is GRANTED. The remaining portion of Count IV of Country's Complaint addressed to a claim against Federal is hereby DISMISSED. This matter is REFERRED to Magistrate Judge Gorman for further proceedings.

ENTERED this 29th day of August, 2005.

                                          s/ Michael M. Mihm
                                          Michael M. Mihm
                                          United States District Judge

---

[2] Given the Court's ruling with respect to this Motion, the Court finds no reason to address the throw-away request in Country's response to reconsider its prior ruling finding that St. Paul had no coverage obligations for the Almy case based on Country's violation of the notice and consent requirements of its policy, particularly as the rationales apply with even greater force to St. Paul, who provided the first layer of excess coverage and whose policy would have been implicated by any settlement in excess of $11 million.