UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| COUNTRY LIFE INSURANCE COMPANY, an Illinois Corporation, COUNTRY INVESTORS LIFE ASSURANCE COMPANY, and COUNTRY MUTUAL INSURANCE COMPANY, an Illinois Corporation,<br><br>            Plaintiffs,<br><br>    v.<br><br>ST. PAUL SURPLUS LINES INSURANCE COMPANY and FEDERAL INSURANCE COMPANY,<br><br>            Defendants. | Case No. 03-1224 |

## **O R D E R**

This matter is now before the Court on Motions for Summary Judgment by Defendant St. Paul Surplus Lines Insurance Company ("St. Paul") and Defendant Federal Insurance Company ("Federal") (hereinafter referred to collectively as "Defendants"). For the reasons set forth below, St. Paul's Motion for Summary Judgment [#139] is DENIED, and Federal's Motion for Summary Judgment [#148] is DENIED.

### **BACKGROUND**

Plaintiffs Country Life Insurance Company, Country Investors Life Assurance Company, and Country Mutual Insurance Company (collectively referred to as "Country") are insurance companies headquartered in Bloomington, Illinois. Country Life does not sell life insurance products through its own employees. Instead, agents under contract with Country Life sell its life insurance products. Country Life enters into Agent's Agreements

with these agents which provide that the agent is an independent contractor. In the 1990s, Country had established a network of approximately 1,200 career agents operating out of more than 800 agency offices. These agents were managed through a network of agency managers and other personnel and were provided with extensive training by Country.

From 1996 to 1999, Country Life and Country Mutual purchased Insurance Company Professional Liability Coverage from three insurers, namely Defendants St. Paul Surplus Lines Insurance Company ("St. Paul"), Federal Insurance Company ("Federal"), and Agricultural Excess and Surplus Insurance Company ("AESIC"). From August 20, 1996, through and including August 20, 1999, Country was insured under AESIC's policy number ICL2067727 with a $10,000,000 aggregate limit for the three-year policy term in excess of a $1,000,000 self-insured retention per claim. For the same policy period, Country purchased a policy from St. Paul with a $10,000,000 aggregate excess of $1,000,000 self-insured retention for the policy period under policy number SIO5500276. Country also purchased a policy from Federal for $10,000,000 aggregate per policy year excess of $20,000,000 for the policy period excess of $1,000,000 self-insured retention per claim under policy number 7022-84-97. Both the St. Paul and Federal policies follow the form of the AESIC policy.

On February 9, 1998, a class action complaint captioned <u>Duckworth v. Country Life Insurance Company, et al.</u>, Case No. 98-1046 was filed in the Circuit Court of Cook County, Illinois, alleging that at Country Life's direction:

> a. Sales agents represented to customers with pre-existing policies that the accumulated dividends and interest of such policies were sufficient to fund additional policies with substantially greater coverage, and that so long as the customer paid the modest premium on the existing

        policy, there would be "no additional cost" to the policyholder.

    b.    Sales agents represented to prospective new customers who had no outstanding policies that premiums on their insurance policies would be paid out of the accumulated dividends and interest generated by such policies, thereby causing the premiums to "disappear" after a limited number of years; and

    c.    Sales agents represented to customers seeking to build the equivalent of a savings account that certain amounts of premiums would generate huge values in the future and guarantee them a "projected monthly income" for a specified, "certain" number of years.

The Complaint further contended that these sales practices were deceptive because "customers were led to believe that regardless of whether interest or dividend rates fluctuated, the policies would generate sufficient funds to either pay for the premiums on the second policy, or to enable the premiums to 'disappear' after the period of years represented" and that "[c]ustomers were not informed of the substantial risks associated with these 'insurance' policies." The <u>Duckworth</u> plaintiffs alleged that their injuries arose "from a deceptive scheme conceived and implemented by Country Life" with the goal of increasing revenues and profitability from the payment of additional policy premiums. Specifically, "[t]o induce new customers to purchase life insurance policies, starting in the 1980's, Country Life instructed agents to represent that premiums on new policies would 'disappear' or 'vanish' after a certain number of years because interest and/or dividends generated by those policies would be more than sufficient to sustain them." The Complaint also maintains that Country "provided training sessions for agents in the disappearing premium technique and other deceptive practices." The Complaint alleged causes of action

for violation of the Consumer Fraud and Deceptive Business Practices Act and the Uniform Deceptive Trade Practices Act, negligent misrepresentation, common law fraud, and breach of contract. The Complaint sought actual damages, exemplary or punitive damages, costs, fees, and prejudgment interest.

On May 18, 1998, a second class action complaint with similar allegations based on "disappearing" or "vanishing" premiums was filed against Country. <u>Lopez v. Country Life Insurance Company</u>, Case No. 98-1153, was filed in this Court. On December 8, 1998, Country received another complaint captioned <u>Reyes v. Country Life Insurance Company</u> that had been filed in the Cook County Circuit Court on November 25, 1998. These complaints also made allegations related to the "vanishing premium" theory and contended that there had been a company-wide fraudulent common course of conduct and deceptive sales scheme that "knowingly and recklessly manipulated its disappearing premium policy illustrations to artificially enhance the illustrated policy performance through a variety of insupportable assumptions and actuarial devices" and "used its artificially inflated dividends as a pretext to sell new disappearing premium policies and other life insurance products to existing Country Life policyholders." The <u>Lopez</u> and <u>Reyes</u> complaints alleged causes of action for fraud, breach of contract, negligent misrepresentation, violation of the Consumer Fraud and Deceptive Business Practices Act and the Uniform Deceptive Trade Practices Act, and fraudulent inducement. In addition, the <u>Reyes</u> complaint included causes of action for negligent training and supervision and breach of fiduciary duty.

The <u>Duckworth</u> and <u>Reyes</u> cases were consolidated in the Cook County Circuit Court, and the parties began to explore the possibility of settlement. On March 30, 2000, Country entered into a Stipulation of Settlement which addressed the claims asserted in

the three cases and provided for the dismissal of the Lopez case with prejudice. The settlement applied to a class of persons who "have or had an ownership interest in one or more whole life and universal life insurance policies issued by Country Life in the United States from January 1, 1982 through May 31, 1998" and included the release of all claims pertaining to Country's insurance sales practices. On April 6, 2000, the Settlement received preliminary approval and notice was sent to the class. Following a fairness hearing on August 10, 2000, and approval by the court, the parties proceeded with the provisions of the Settlement.

Country submitted documentation to St. Paul and Federal advising that AESIC had paid the policy limits for the cost of the litigation and settlement of the vanishing premium litigation, informing them of costs exceeding the coverage under the AESIC policy, and requesting reimbursement. St. Paul has refused to reimburse Country as requested based on its assertion that the vanishing premium litigation and settlement is not covered by its policy. Federal reserved its rights under the policies via letters dated April 13, 1998, August 17, 1998, November 20, 1998, and March 11, 1999.

On July 9, 2003, Country brought this suit seeking damages for breach of contract, as well as a declaration that St. Paul and Federal are obligated to reimburse Country for the losses it suffered in connection with the vanishing premium litigation and settlement. St. Paul and Federal have now moved for summary judgment. The matters are fully briefed, and this Order follows.

## LEGAL STANDARD

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." Id. at 325.  Any doubt as to the existence of a genuine issue for trial is resolved against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial.  Celotex, 477 U.S. at 324.  Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989).  Summary judgment will be denied where a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

## DISCUSSION

A. <u>Wrongful Act in Performance of Professional Service</u>

The AESIC Insuring Agreement[1] provides:

> That if, during the Policy Period, any Claim is first made against the Insured, for a Wrongful Act in the performance of Professional Services, the Insurer shall reimburse the Insured for Loss sustained by the Insured as a result of such Claim.

"Insured" is further defined to include both Country and "all persons who were, now are, or shall be directors and/or officers and/or employees of the Company, while acting solely in their capacity as such . . . ." The policy defines a "Wrongful Act" as "any actual or alleged act, error or omission by or on behalf of the Insured committed or omitted in the performance of Professional Services," and "Professional Services" is further defined as:

> [T]he following services rendered by or on behalf of the Insured: claims handling and adjusting, safety inspections, loss control, safety engineering, premium financing, insurance consulting, actuarial consulting, risk management, personal injury rehabilitation, subrogation and salvage, including such services provided for others.

An Amendatory Endorsement then expands the definition of "Professional Services" to include insurance agent/brokerage operations and data processing operations.

Defendants first move for summary judgment on the ground that Country was not accused of a wrongful act in the performance of agent/broker operations or any other professional service covered by the policies in question. Specifically, they argue that Country was acting as an insurer, not as an agent or broker, in connection with the

---

[1] Since the St. Paul and Federal policies follow the form of the AESIC policy, only the AESIC policy language will be quoted unless it is superceded by a specific provision in one of the other policies.

- 7 -

vanishing premium policies sold by independent contractor agents. As a result, Defendants contend that the policy did not cover Country for any wrongdoing that might occur whenever an independent contractor agent sold a Country policy; the agent/broker coverage only applied to insure Country as an entity when that corporate entity itself acted as an agent or broker (e.g., C.C. Services).

In support of this argument, Defendants rely on testimony by James Willis ("Willis"), Country's former insurance broker who obtained the policies in question. Willis testified in his deposition that based on conversations that he had with Steward Lyman ("Lyman"), Country's risk manager, the endorsement for agent/broker operations was intended to cover insurance policy sales by C.C. Services when that entity sold policies issued by third party insurers because a customer had requested a type of insurance that Country did not provide. As C.C. Services was not named as a defendant in any of the vanishing premiums litigation, Defendants contend that the endorsement cannot apply.

Country responds with Lyman's Affidavit, in which he flatly denies having had discussions with Willis regarding adding the endorsement to cover any purported gap in coverage for Country's insurance agency operations. Lyman further denies having any understanding that the endorsement was limited to coverage for the in-house agency operations of C.C. Services. Rather, he indicates that it has always been his understanding that the policy provided coverage for claims against Country arising from the acts, errors, or omissions of Country's independent agency force. Additionally, Lyman states that St. Paul issued a separate policy that provided professional liability coverage to C.C. Services that would have been completely unnecessary if the endorsement had been intended to cover C.C. Services as suggested by Defendants. Country also provides the Affidavit of

James Burcham ("Burcham"), who was another risk manager for Country at the time in question. Burcham likewise denies having had the discussions claimed by Willis and concurs in Lyman's understanding that the policies provide coverage for claims arising from the acts, errors, or omissions of the independent agents. The deposition testimony of Michael Pierce and Kevin Gadbois, both of whom were involved in AESIC underwriting at the time and were familiar with the policy, indicates their understanding that the policy covered the activity of selling insurance, including the activities performed by an agent and/or broker in selling insurance.

      The Court notes that there is a serious question as to whether any extrinsic evidence should be considered in interpreting the meaning of the contract language, as St. Paul has previously taken the position that the phrase "insurance agent/brokerage operations" is "totally unambiguous." The Court agrees, but reaches a contrary result as to the effect of the policy language. The plain language of the policy states that it applies to Professional Services "rendered by or <u>on behalf of</u>" Country (emphasis added); Defendants' construction of the policy would render the "on behalf of" language a nullity. The endorsement then enumerates insurance agent/brokerage operations as one of the Professional Services, and there is no language limiting the insurance agent/brokerage operations solely to in-house operations or C.C. Services.

      Accordingly, the Court finds that the plain language of the policy is unambiguous. On its face, the policy provides coverage for insurance agent/brokerage operations rendered on behalf of Country, which in the absence of limiting language would include the

independent agents selling policies on behalf of Country. Defendants' Motion for Summary Judgment is therefore denied on this issue.[2]

B.  No Duty to Indemnify

Defendants contend that the policies provide no coverage under the facts of this case for a variety of reasons, including: (1) claims alleging breach of contract are not covered because there is no wrongful act and no loss; (2) Country was accused only of intentional misconduct; (3) the complaints sought only restitutionary liability; (4) the complaints sought only equitable relief; (5) the policy relief exclusion applies; (6) the premium exclusion applies; (7) the warranty exclusion applies; (8) the criminal act exclusion applies; (9) the financial inability exclusion applies; and (10) the policy does not cover any non-compensatory relief such as attorney's fees, settlement administration costs, costs of defense, or punitive damages.

Country responds that Defendants' Motions cannot be granted on the record now before the Court, as Defendants have relied solely on the allegations of the underlying complaints and their own self-serving assertions rather than evidence. In support of this argument, Country cites Outboard Marine Corp. v. Liberty Mutual Insurance Company, 154 Ill.2d 90, 128 (1992), for the proposition that the duty to indemnify requires more than a consideration of the allegations made against an insured that initiates litigation. Rather, the

---

[2] Moreover, even assuming arguendo that the policy language could be deemed ambiguous such that extrinsic evidence could properly be considered, Defendants' Motions would nevertheless be denied as there would clearly be a genuine issue of material fact with respect to whether the conduct alleged in the disappearing premium litigation fell within the Professional Services covered by the policy.

actual underlying activity and loss at issue must be considered once the insured has incurred liability. Id.

The Court agrees with Country. Defendants arguments rest largely on their self-serving construction of the allegations in the underlying vanishing premiums complaints or require disputed facts to be construed in their favor. For example, Defendants' argument that the underlying claims alleging breach of contract are not covered relies on the allegations of the underlying complaints rather than the actual facts involved and requires the assumption that the alleged misrepresentations by Country agents in selling the insurance policies actually became part of the policies that issued. Defendants' contention that the intentional misconduct alleged in the complaints is not a "Wrongful Act" covered under the policy likewise rests on the complaints' allegations and requires a construction of the policy language that is different from its plain meaning. The policy defines a "Wrongful Act" in fairly broad terms as "any actual or alleged act, error or omission by or on behalf of the Insured committed or omitted in the performance of Professional Services," which does not necessarily compel the conclusion that intentional misconduct is not covered, and Defendants have not pointed to any language specifically excluding intentional acts. Defendants also maintain that the settlement involved only uninsurable restitutionary relief, when compensatory damages, punitive damages, costs, and attorneys' fees were also sought, and the policies define "Loss" as including compensatory damages, punitive damages, settlements, and costs of defense.

Defendants argument that they are not liable for any amount that has any connection with a claim for benefits, coverage or amounts allegedly due under life insurance policies sold by Country requires the Court to ignore any reasonable inference

that could be drawn from the fact that the claims did not allege that claimants did not receive policy benefits, bargained-for insurance coverage, or amounts due to them as payouts under the policies. Rather, the claims alleged that the claimants would not have purchased the policies had they been aware of the misrepresented information and sought to enforce the agents' representations against Country. Similarly, the applicability of the premium exclusion requires a threshold factual determination as to whether the settlement involved the return of premiums due or allegedly due. Defendants' assertion that the settlement is not covered because the policy excludes payment for claims arising from or involving express warranties or guarantees would require the Court to construe the language of the allegations in the light most favorable to Defendants to elevate the claim that Country failed to disclose that the vanishing premium scenario was contingent upon interest rates and/or dividend scales remaining at their then-current levels into express warranties or guarantees.

There is an absence of evidence in support of Defendants' invocation of the criminal acts exclusion, as Defendants have again rested on the allegations of the underlying complaints. Country, on the other hand, has introduced the results of investigations by St. Paul's own attorneys finding no evidence of criminal activity or intent by Country and cited Scott v. Assoc. for Childbirth at Home Int'l., 88 Ill.2d 279, 288 (Ill. 1982), as establishing that the Consumer Fraud and Deceptive Practices Act is not a criminal or penal statute. Defendants next rely on the financial inability exclusion, which provides that Country is not entitled to payment under the policy for claims "based on, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the financial inability to pay claims or to perform Professional Services." Although this argument is premised on the

theory that had Country not cut its dividends in 1994, the premiums would have continued to disappear and plaintiffs would not have had any basis to complain, there is no claim in the underlying litigation or any evidence before the Court indicating that Country was financially unable to perform Professional Services or pay claims for actual benefits that had actually been sought and denied. Finally, Defendants argue that there is no coverage for the non-compensatory part of the settlement, such as underlying plaintiffs' attorneys' fees, settlement administration costs, or punitive damages. However, as the definition of "Loss" under the policy included punitive damages and settlements, and the payments to the settlement administrator and plaintiffs' attorneys were included within the settlement, the Court cannot find as a matter of law that such amounts were necessarily excluded from coverage.

While several of Defendants' arguments are far from frivolous, Defendants fail to acknowledge that genuine issues of material fact present threshold inquiries and that it is Country that is entitled to the benefit of all reasonable inferences. At the summary judgment stage of litigation, it is well-settled that Defendants cannot simply rely on the allegations of the underlying complaints as construed by them and resolve all factual disputes in their favor, yet that is precisely what Defendants are asking the Court to do in the present Motions. As questions of material fact clearly remain in dispute and require resolution at trial, the Court cannot conclude that no reasonable fact-finder could find in favor of Country when all facts and any reasonable inferences that can be drawn therefrom are construed in its favor. Accordingly, Defendants' Motions for Summary Judgment must be denied.

C.    Section 155 of the Insurance Code

In a one paragraph argument, Defendants contend that they cannot be liable under § 155 of the Insurance Code unless their failure to pay was vexatious or unreasonable. Defendants argue that the bad faith claims should be dismissed on the grounds that its conduct was bona fide, legitimate, genuine, and reasonable.

Section 155 of the Illinois Insurance Code provides that an award of attorneys fees and other costs is appropriate if insurers' actions are "vexatious and unreasonable." 215 ILCS 5/155 (West 1999). Under this statute, an insurer must do more than take a position that is ultimately unsuccessful; rather, the evidence must show that the insurer's behavior was "willful and without reasonable cause." Citizens First National Bank of Princeton v. Cincinnati Ins. Co., 200 F.3d 1102, 1110 (7th Cir. 2000). Accordingly, an insurer's conduct is not vexatious if:

> (1) there is a bona fide dispute concerning the scope and application of insurance coverage ; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law.

Id. (internal citations omitted).

Here, although the Court has determined that coverage was at least potentially available for Country and there is some evidence from the insurance companies' internal investigations that a reasonable fact-finder could construe as evidence of bad faith, factual disputes abound and require determination at trial. Thus, summary judgment is not appropriate on this claim, as well.

## CONCLUSION

For the reasons set forth above, St. Paul's Motion for Summary Judgment [#139] is DENIED, and Federal's Motion for Summary Judgment [#148] is also DENIED.

ENTERED this 27th day of March, 2006.

s/ Michael M. Mihm<br>
Michael M. Mihm<br>
United States District Judge